## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHLEEN PRESCOD** | : | CIVIL ACTION |
| and | : | |
| **USHAKANT RINDANI** | : | No. 08-3778 |
| Individually and on behalf of all others | : | |
| similarly situated | : | |
| | : | |
| Plaintiffs, | : | Before the Hon. Petrese B. Tucker |
| | : | United States District Judge |
| v. | : | |
| | : | |
| **BUCKS COUNTY** | : | |
| and | : | |
| **BUCKS COUNTY BOARD OF ELECTIONS** | : | |
| and | : | |
| **BUCKS COUNTY BOARD OF** | : | |
| **COMMISSIONERS** | : | |
| | : | |
| Defendants. | : | |

### PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS

Plaintiffs Kathleen Prescod and Ushakant Rindani request this Honorable Court, pursuant

to 42 U.S.C. §§ 1973l(e) and 1988(b), award payment to their attorneys, Marc E. Weinstein and

Ralph E. Lamar, attorneys' fees to date in the total amount of $29,162.50, as well as costs to date

in the total amount of $2,612.85. Plaintiffs state in support as follows:

1.      This a civil rights case arising under the Voting Rights Act of 1965, as amended (42 U.S.C.

§ 1973). Plaintiffs are residents of the Creekside apartment complex in Bensalem, Bucks County.

2.      The United States District Court for the Eastern District of Pennsylvania has original subject

matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331.

3.      Ms. Prescod is African-American, and was born in the United States. Mr. Rindani was born

in India and he became a citizen of the United States in or about 1979.

4.      On August 11, 2008 they filed a class-based complaint alleging that Defendants violated the law by moving Plaintiffs' polling place away from the Creekside community room to another location - Polanka Hall - more than a mile away, across a major traffic artery. Plaintiffs sought a declaratory judgment and injunctive relief. *See* Dkt. No. 1.

5.      In their complaint, Plaintiffs contended that Defendants' action, initially made in April 2007 and reaffirmed in February 2008, unlawfully prevented minorities from participating effectively in the political process or electing candidates of their choice. *See United States v. Blaine County*, 363 F.3d 897, 906-07 (9th Cir. 2004) (voting procedure unlawful if, given the totality of the circumstances, it prevents minorities from participating effectively in the political process or electing candidates of their choice).

6.      Defendants' assistant solicitor, Tina Mazaheri, accepted service on behalf of Defendants on August 25, 2008. Said notice was filed with the Court on the same day. *See* Dkt. No. 2.

7.      Two days later, on August 27, 2008, Plaintiff filed a motion for preliminary injunction requesting, *inter alia*, the Court order Defendants to return the polling place to Creekside in time for the November 4th presidential election. *See* Dkt. No. 3. Defendants filed a response to the motion on September 4, 2008. *See* Dkt. No. 4.

8.      After a telephone conference with counsel on September 9, 2008, the Court allowed the parties to conduct expedited discovery related to the motion, and the Court then convened an evidentiary hearing and considered oral arguments on Monday, September 29, 2008 and Tuesday September 30, 2008. *See* Dkt. Nos. 5, 26-28.

9.      At the hearing, the Court heard extensive testimony detailing the genesis of (and motivations for) the decision to move the poll away from Creekside, the effect of the move on Creekside

residents, and the substantial difficulty the move had caused and would continue to cause Creekside

voters in exercising their right to vote.

10.      At the conclusion of the hearing on Tuesday, September 30, 2008, the Court directed the

parties to file briefs no later than the following Tuesday, October 7, 2008.  *See* Dkt. No. 20.  New

counsel for Defendants entered their appearance on Monday, October 6, 2008 and the parties began

discussions to resolve the issue raised by the motion for preliminary injunction.  To accommodate

these discussions, the Court allowed an extra week for briefing.  *See* Dkt. Nos. 21-23.

11.      On October 14, 2008, counsel submitted a proposed Stipulation and Order for Court approval

setting forth an agreement between the parties which would make it unnecessary for the Court to

rule on the pending motion.  *See* Dkt. No. 14.  The Court approved the Stipulation and entered it as

an Order of Court the following day, October 15, 2008.  *See* Dkt. No. 15.

12.      The Order approved Defendants' decision to move the disputed polling place back to a

location adjacent to Creekside, and Ordered Defendants to keep it there (barring emergency) through

the presidential election.  This new, agreed-to location was within walking distance of Creekside and

all witnesses testified that this location - in the adjacent shopping center - was accessible.

13.      By relocating the poll to this adjacent shopping center, Creekside residents no longer had to

cross Street Road or Knights Road in order to exercise their right to vote.  All of the witnesses

presented by Plaintiff testified that they could walk, and walk safely, to the new location.  Whereas

Polanka Hall is nearly a mile and a half away from Creekside, the shopping center is within several

hundred feet.

14.      Courts in the United States have historically applied the "American Rule," under which each

party is to bear its own costs of litigation, unmitigated by any fee-shifting exceptions.  *See Alyeska*

*Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975).

15.     In civil rights cases, however, Congress has authorized the courts to "allow the prevailing party . . . a reasonable attorney's fee."  42 U.S.C. § 1988(b) ("§ 1988").  Pursuant to this authority, the "prevailing party" in such cases is normally awarded attorneys' fees, absent special circumstances.  *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 232 (3d Cir. 2008) (citations omitted).

16.     Congress has also specifically provided for fee shifting in voting rights cases.  *See* 42 U.S.C. § 1973l(e) ("§ 1973l(e)") ("In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . .").

17.     The purpose of § 1973l(e) and § 1988 is "to ensure effective access to the judicial process" for persons with civil rights or voting rights grievances.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotations omitted).

18.     The Supreme Court has further recognized that, by providing a reasonable attorneys' fee to those who "as 'private attorneys general' take it upon themselves to invoke and thereby invigorate federal constitutional and statutory rights," Congress hoped "to encourage private citizens to initiate court action to correct violations of the Nation's civil rights statutes . . . and . . . to insure that those who violate the Nation's fundamental laws do not proceed with impunity."  *King v. Ill. State Bd. of Elections*, 410 F.3d 404, 412 (7th Cir. 2005) (citing *Charles v. Daley*, 846 F.2d 1057, 1063 (7th Cir. 1988), *cert. denied sub nom. Diamond v. Charles*, 492 U.S. 905 (1989)).

19.     In that Plaintiffs successfully compelled Defendants to move the poll back to an accessible location, in a manner which was enforceable in this Court and was approved by this Court, Plaintiffs

are a prevailing party entitled to an award of reasonable attorneys' fees and costs, pursuant to § 1988

and § 1973l(e). *See Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and*

*Human Resources*, 532 U.S. 598, 604 (2001) (to "succeed" under the prevailing party standard, a

party must achieve a "court-ordered change in the legal relationship between the plaintiff and the

defendant.").

20.     The Supreme Court set forth the general rule in the computation of fees as: "the initial

estimate of a reasonable attorneys' fee is properly calculated by multiplying the number of hours

reasonably expended on the litigation times a reasonable hourly rate based on the prevailing market

rates in the relevant community." *City of Burlington v. Dague*, 505 U.S. 557 (1992); *Blum v.*

*Stenson*, 465 U.S. 886 (1984); *Hensley v. Eckerhart*, 461 U.S. 424 (1983).  The fee computation has

been referred to the "lodestar" amount.

21.     The hourly rate of lead counsel Marc E. Weinstein was $325 per hour during all times

applicable hereto, and this is the rate normally billed and received by him for non-contingent hourly

legal services rendered by him. *See* Affidavit and Resume of Marc E. Weinstein (attached hereto

as Exs. 1 and 2).

22.     The hourly rate of co-counsel Ralph E. Lamar was $350 per hour during all times applicable

hereto, and this is the rate normally billed and received by him for non-contingent hourly legal

services rendered by him. *See* Affidavit and Resume of Ralph E. Lamar (attached hereto as Ex. 3

and 4).

23.     These rates are reasonable as measured by rates charged for comparable services by attorneys

of equal status in the relevant legal market. *See* Affidavit of Alice W. Ballard, Esq. (Ex. 5),

Affidavit of Carmen Matos, Esq. (Ex. 6), and Affidavit of Andrew F. Erba, Esquire (Ex. 9) (to be

provided).

24.    As shown in the detailed Time and Expense Schedules (attached hereto as Exs. 7 and 8),

Marc E. Weinstein devoted 50.1 billable hours and Lamar devoted 36.5 billable hours. The lodestar

amount for Weinstein is $16,282.50; for Lamar $12,880.

25.    These hours are reasonable in light of the importance and complexity of the litigation, the

numerous depositions and witnesses required to prove Plaintiffs' claims, and the work required by

the vigorous defense presented to this Court by Defendants.

26.    The total costs of the litigation to date are $2,612.85. *See* Exs. 7 and 8.

27.    Plaintiffs respectfully request the right to supplement this Petition, if necessary, pending any

response of Defendants to the petition which requires a reply and possible further proceedings or

appeal.

**WHEREFORE**, Plaintiffs request this Court to enter an Order granting their petition for

attorneys' fees in the total amount of $29,162.50, as well as costs to date in the total amount of

$2,612.85. A proposed order is attached.

Respectfully submitted,

**THE WEINSTEIN LAW FIRM**

By:    /s/ Marc E. Weinstein
       Marc E. Weinstein, Esquire
       One Northbrook Corporate Center
       1210 Northbrook Drive, Suite 280
       Trevose, PA 19053
       215.953.5200
       meweinstein@comcast.net
       Counsel to Plaintiffs

Dated: November 12, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHLEEN PRESCOD** | : | CIVIL ACTION |
| and | : | |
| **USHAKANT RINDANI** | : | No. 08-3778 |
| Individually and on behalf of all others | : | |
| similarly situated | : | |
| | : | |
| Plaintiffs, | : | Before the Hon. Petrese B. Tucker |
| | : | United States District Judge |
| v. | : | |
| | : | |
| **BUCKS COUNTY** | : | |
| and | : | |
| **BUCKS COUNTY BOARD OF ELECTIONS** | : | |
| and | : | |
| **BUCKS COUNTY BOARD OF** | : | |
| **COMMISSIONERS** | : | |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2008, upon consideration of

Plaintiffs' Petition for Attorneys' Fees and Costs, and Defendants' response thereto it is hereby

**ORDERED** that Plaintiffs' Petition is **GRANTED**. It is further **ORDERED** that Defendants remit

to Plaintiffs' counsel the following amounts:

1. $16,282.50 in fees and $2,423.15 in expenses to attorney Marc Weinstein, Esq.

2. $12,880 in fees and $189.70 in expenses to attorney Ralph Lamar, Esq.

**BY THE COURT:**

_____

Petrese B. Tucker, Judge

## CERTIFICATE OF SERVICE

I, Marc E. Weinstein, Esquire, hereby certify that on the 12th day of November, 2008, I caused the foregoing **Plaintiffs' Petition for Attorneys' Fees and Costs** to be filed via ECF and that all of Defendants' attorneys are filing users under the ECF system.

Upon the electronic filing of a pleading or other document, the ECF system will automatically generate and send a Notice of Electronic Filing to all filing users associated with this case.  Electronic service by the Court of the Notice of Electronic Filing constitutes service of the filed document and no additional service upon the filing user is required.


By:     /s/ Marc E. Weinstein
        Marc E. Weinstein, Esquire
        One Northbrook Corporate Center
        1210 Northbrook Drive, Suite 280
        Trevose, PA 19053
        215.953.5200
        meweinstein@comcast.net
        Counsel to Plaintiffs