# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRESCOD, ET AL., | : |
|     Plaintiffs, | : |
| | : |
| | :   CIVIL ACTION NO. 08-3778 |
| v. | : |
| | : |
| BUCKS COUNTY, ET AL., | : |
|     Defendants. | : |
| | : |

## MEMORANDUM AND ORDER

Tucker, J.                                                                                                                      November ___, 2009

Presently before the Court are Plaintiff's Petition for Attorneys' Fees and Costs (Doc. 31), Defendants' Motion for Summary Judgment (Doc. 35), Plaintiff's Motion to Amend Complaint (Doc. 37) and all responses thereto.

## I. BACKGROUND

Plaintiffs initiated this action to redress alleged violations by Defendants of Section 2 of the Voting Rights Act of 1965, as amended (42 U.S.C. §1973). Plaintiffs are registered voters of the Creekside apartment complex ("Creekside") in Bensalem, Bucks County and they are of a minority race and minority national origin. Creekside is located in Bensalem's Lower Middle 5 (LM-5) election district, and the Creekside residents constitute roughly 75% of the registered voters in LM-5. Creekside residents are also largely of minority race or national origin.

For approximately thirty (30) years prior to April 2007, the LM-5 polling location was in the Creekside community room. Creekside residents could walk to vote, right within their complex. In April 2007, Defendants moved the polling place out of Creekside to a location more than a mile away on the other side of Bensalem's major east-west traffic artery.

Plaintiffs claim that Defendants' decision resulted in the denial or abridgement of the

right to vote on account of race, color or national origin.  It is further alleged that Defendants' intended to disenfranchise the Creekside voters.  After a year and a half of unsuccessfully petitioning Defendants to return the LM-5 polling place back to Creekside, Plaintiffs now seek judicial intervention.

The complaint seeks (1) declaratory judgment and (2) permanent injunctive relief.  Defendants request the preliminary injunction be denied insofar as Plaintiffs are unlikely to prevail on the merits at the final hearing.  They counter that there is no proof of any discriminatory intent in relocating the polling place.  Defendants argue that Plaintiffs have not been, nor are they being irreparably harmed by the move of the polling place.  They state that they will incur irreparable harm if the preliminary injunction is issued by having to move the polling place back to Creekside.

On September 29th and 30th, 2008, the parties appeared before the Court for an evidentiary hearing.  On October 15th, the Court approved a joint stipulation relocating the polling place to St. Mary's Wellness Center.  Because the location was suitable for the Creekside residents, the parties also stipulated that the preliminary injunction request was moot.  The parties then filed the motions presently before this Court.

## II.  DISCUSSION

### A. Plaintiffs' Petition for Attorneys' Fees and Costs

Plaintiffs' request for attorneys' fees and costs pursuant to 42 U.S.C. §§1973(e) and 1988(b) is granted.  In order to obtain attorney's fees, the moving party must demonstrate an "enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement."  Farrar v. Hobby, 506 U.S. 103, 111 (1992).

Demonstrating such a "material alteration of the legal relationship of the parties" allows the Court to treat the plaintiff as a prevailing party. Id. at 111. While the stipulation entered into by the parties on October 14th, 2008 represents the fruits of the parties compromise, it was still subject to Court approval and thus "bears the sanction of, judicial action in the lawsuit." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 618 (1994). This is further underscored by the language with which the Court approved the joint stipulation submission. ("So ordered by the Court this 15th day of October, 2008.") Although all counsel signed off on the stipulation, the agreement would have no effect without the Court's approval that served to bind the parties the terms of the agreement. Further, it was not necessary for the Court to include any language reserving jurisdiction because the case remained open despite the compromise over the poling place location. Accordingly, Plaintiffs' request is granted for attorneys' fees in the total amount of $29,162.50 and $2,612.85 is granted.

**B. Defendant's Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis of its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against opponent, even if the quality of the movant's evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

**1. Plaintiff's Claim for Injunctive Relief**

Defendant's request for summary judgment is granted as to the request for injunctive relief because the issue is moot. As a court of limited jurisdiction, deciding issues without a live case or controversy is improper. U.S. CONST. art. III, § 2. An action must present a legal controversy that (1) is real and not hypothetical, (2) affects an individual in a concrete matter so as to provide the factual predicate for reasoned adjudication, and (3) sharpens the issues for

judicial resolution.  Int'l Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987).  It is necessary that this requirement be met regardless of the relief sought, including declaratory relief.  Skelly Oil Co. v. Phillips Petroleum, Co., 339 U.S. 667, 671 (1950).

Here, the relocation of the polling place from Polanka Hall to St. Mary's Wellness Center in response to Plaintiff's request for a preliminary injunction renders the claim for a permanent injunction moot.  While the Court disagrees with Defendant's assertion that the Court approved stipulation entered in this matter on October 14, 2008 serves as an admission by Plaintiff that the request for a permanent injunction is moot, it does agree that the request now lacks "sufficient immediacy and reality" to meet the case or controversy requirement.  O'Shea v. Littleton, 414 U.S. 488, 497 (1974).  The October stipulation set forth an agreement between the parties that the request for a preliminary injunction became moot once the parties agreed to St. Mary's Wellness Center as a suitable polling place.  However, the stipulation does not state that the parties both agree that the request for a permanent injunction is not necessary.

Despite disagreeing with Defendant's characterization of the stipulation, the Court finds persuasive the overall position that any past harm alleged by Plaintiffs is not sufficient grounds to grant a permanent injunction.  Plaintiffs rely upon testimony at the preliminary injunction hearing but the Court is not convinced that any alleged past harm presents an ongoing "case or controversy regarding injunctive relief," particularly in the absence of proof of continuing adverse effects.  Id. At 495-96.  The Court finds this matter distinguishable from the Third Circuit case, United States v. Berks County, upon which Plaintiffs rely to justify a disposition on the permanent injunction request.  277 F.Supp.2d 570 (E.D. Pa. 2003).

In Berks, the parties participated in a preliminary injunction hearing after which the court

determined that Plaintiffs would likely prevail on the merits and accordingly, granted the request for injunctive relief. Id. at 535-42. The Defendants did not comply with the court's order, at which point a request was made for a permanent injunction. In light of Defendant's failure to comply, the court issued a permanent injunction after converting the preliminary injunction hearing into a final disposition on the merits of the case and found findings of fact and conclusions of law. It is this difference in facts that distinguishes Berks from the present matter. Here, not only did the parties agree to a solution in which the polling place was relocated before the November 2008 election, Defendants also complied with the agreement after it was approved and so ordered by this Court. Thus, not only is the claim for a permanent injunction moot, given Defendant's cooperation with the joint stipulation the issue lacks ripeness.

To briefly review, a matter is not ripe for judicial disposition when it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Wyatt, Virgin Islands, Inc. v. Gov't of the Virgin Islands, 385 F.3d 801, 806 (3d Cir. 2004) (quoting Texas v. United States, 523 U.S. 296, 300 (1998)). A request for a permanent injunction after Defendants have provided full cooperation with the parties' agreement would rest upon claims that are too vague and remote for the Court to render a final disposition. Id. at 806. Accordingly, Defendant's Motion for Summary Judgment as it pertains to Count II of Plaintiff's Complaint is granted.

**2. Plaintiff's Claim for Declaratory Relief**

Defendant also seeks summary judgment on Count I of the complaint, the request for declaratory judgment finding a violation of the Voting Rights Act in moving the LM-5 poll from Creekside to Polanka Hall in April 2007 and keeping it there for three subsequent elections.

Defendant argues that a declaratory judgment on the legality of past conduct without presence of a live case or controversy would constitute a disfavored advisory opinion. Where a litigant seeks injunctive relief that is no longer available and no money damages are sought, it is improper for the Court to enter a final judgment. Such action would amount to an advisory opinion on the past conduct for which no viable relief is sought in the complaint. Policastro v. Kontogiannis, 262 F.App'x 429, 433 (3d. Cir. 2008) (not precedential) ("[D]eclaratory relief would amount to no more than an advisory opinion regarding the 'wrongfulness' of past conduct.").

Because the original complaint did not seek monetary damages, the stipulation by both parties to relocate the polling place as well as Defendants' compliance removes any issue in this matter that can be deemed a live case or controversy. For these reasons, Defendant's Motion for Summary Judgment of Count I is granted.

**C. Plaintiff's Motion to Amend the Complaint**

While the Court agrees with Defendant, as noted above, that declaratory judgment on the original complaint would amount to an improper advisory opinion–it is not convinced that this brings the matter to an end. Both parties acknowledge that there may or may not have been a past harm resulting from the relocation of the Creekside polling place to Polanka Hall. When Plaintiffs filed a request for a preliminary injunction the Court promptly scheduled a hearing on the matter and allowed the parties to conduct in a brief, accelerated discovery period. As a result of the proceedings, evidence emerged that may not have been available to Plaintiffs at the time of the filing of the original complaint. Accordingly, Plaintiffs now request the Court to allow them to file an amended complaint that reflects the new information gleaned from the brief discovery and hearings.

The Federal Rules of Civil Procedure provide a liberal standard for amending pleadings. Pursuant to Rule 15(a), a court has discretion to permit the amending of a complaint. Forman v. Davis, 371 U.S. 178, 182 (1962). In exercising its discretion, a court may consider the following factors: (1) undue delay; (2) bad faith or dilatory motive on movant's part; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party by virtue of the amendment; and (5) futility of the amendment. Id.; Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003).

Despite the discretion provided by the rules for amending pleadings, the Court will deny Plaintiffs' motion for two reasons. First, the amended claims are likely futile, as the Voting Rights Act precludes the claims asserted by Plaintiffs in the amended complaint. Finally, the Court highly disfavors motions to amend that not only follow the filing of a motion for summary judgment but are also untimely filed.

**1. Doctrine of Futility**

The doctrine of futility allows a court to refuse any amendment that fails to state a cause of action. Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001). Here, Plaintiffs' amendments are futile because the Voting Rights Act precludes §1983 and §1985 remedies. Jafari v. City of Richmond, No. 05-00823, 2006 WL 544435, at *4 (E.D. Va. May 12, 2006), *aff'd*, 211 F.App'x 200 (4th Cir. 2006). The same allegations underlying Plaintiffs' Voting Rights Acts claims also form the basis of the §1983 and §1985 claims. The Supreme Court held that a federal statute may implicitly preclude a §1983 action by creating a comprehensive remedial scheme. Middlesex County Sewerage Auth. V. Nat'l Sea Clammers Assoc., 453 U.S. 1, 20 (1981). Decisions in the Sea Clammers line of cases finding that a

claimed violation of a federal statute impliedly precludes a claimed violation of §1983 turned upon the existence of more restrictive remedies provided in the violated statute itself. City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 121 (2005). Under the Sea Clammers cases, if a statute's remedial scheme is "more restrictive" for statutory violations than the relief available under §1983, then a party cannot resort to §1983 remedies, and the plaintiff can only bring action under the violated statute. Id.

Courts have applied the Sea Clammers analysis to the Voting Rights Act and concluded that facts giving rise to a claimed violation of the Act cannot also support claimed violations of a §1983 claim. Jafari, No. 05-00823, 2006 WL 5444365, at *4. Claims under §1983 cannot as a means to enforce the Voting Rights Act because the Act has its own comprehensive internal enforcement shceme. Id; Moseley v. Price, 300 F.Supp.2d 389, 396 n.11 (E.D. Va. 2004), *aff'd* 106 F.App'x 873 (2004). For example, in Jafari, the plaintiff brought claims for a violation of both the Voting Rights Act and §1983 for denial of equal protection, due process, free speech and association, and the right to vote. Id. at *1. The Jafari court dismissed all of the plaintiff's §1983 claims. Id. at *4. Looking to Sea Clammers, the court reasoned that the plaintiff's Voting Rights Act claim formed the basis of the plaintiff's claims under §1983 and as a result, determined that the §1983 claims failed as a matter of law. Id.

Here, Plaintiffs admit in their reply brief that two of their amended complaint claims would fail under Sea Clammers. The admittedly failed claims are Count Three–a claim against the County defendants for a §1983 violation and Count Five–a claim against the individual defendants for a §1983 violation. In their reply brief, Plaintiffs argue that the remainder of the §1983 claims would survive because they are based on equal protections violations and

conspiracy. However, the Court does not find that such distinction exists to render the claims legally viable.

Again, Jafari offers useful guidance. The court dismissed all claims based on the same facts as the alleged Voting Rights Act violations, including an equal rights violation allegation. Id. Additionally, under the Supreme Court's analysis in Sea Clammers, the Voting Rights Act provides its own remedy for conspiracy at §1973 j (c), which is more restrictive than the remedies provided under §1983. Thus, a conspiracy claim stemming from facts related to the alleged Voting Rights Act violation fail as a matter of law. Accordingly, Plaintiffs' amended §1983 claim–Counts Three through Seven–are futile as demonstrated by the reasoning in both the Sea Clammers line of cases as well as Jafari.

Plaintiffs' remaining amended claim is Count Eight, an alleged violation of §1985 for conspiracy to deny Plaintiffs' federally protected rights. Although Sea Clammers prohibits violations claimed pursuant to §1983 arising from the same facts of a Voting Rights Act violation claim, the Court finds the reasoning applicable with equal gravity to §1985 claims. Both statutes are part of the same legislative scheme. Under the Sea Clammers analysis as previously explained, the Voting Rights Act was intended to be the primary statute for resolving claims of voting-related violations and has its own comprehensive remedial scheme for such allegations in 1973j(c).

**2. Improper Filing Purpose**

In addition to the futility doctrine, a court has discretion to deny an amendment if such action was done for an improper purpose. Fraser, 352 F.3d at 116. Courts highly disfavor motions to amend filed after a summary judgment motion has already been filed. See, e.g., Fatir

v. Dowdy, No. 950677 WL 2018824, at *8 (D. Del. Sept. 4, 2002) (citations omitted). When a plaintiff files a motion to amend after the filing of defendant's motion for summary judgment, the timing "raises the inference that the plaintiff is attempting to bolster his legal position–and therefore avoid summary judgment–by amending the complaint. This is an unacceptable reason to amend." Id. (citations omitted). Further, courts have held that "permitting such an amendment at this stage would change the focus of that portion of the litigation, thereby prejudicing the defendants." Id. (citations omitted).

In the case at hand, Plaintiffs insist that the delay in the filing of the motion to amend was the result of evidence and testimony obtained at the evidentiary hearing in September 2008. However, they fail to explain why they waited until February 2009 to seek an amendment. This District has determined that a plaintiff could not amend her complaint in light of evidence gained during depositions because the motion to amend was filed nearly two months after the depositions took place and plaintiffs failed to file adequate justification for such delay. Whitman v. Proconex, Inc., No. 08-2667, 2009 WL 113740, at *3 (E.D. Pa. Jan. 14, 2009) (denying plaintiff's motion to amend that was filed several weeks after defendants filed for summary judgment and two months after the deposition of defendants' witness).

Similar to the plaintiff in Whitman, Plaintiffs here claim that the evidentiary hearing in September provided information relevant to the motion to amend. Yet, like the plaintiff in Whitman, there is currently no explanation for the filing of this motion several months after the September hearings. The delay here is five months–more than twice as long as the delay in Whitman. Accordingly, the Court will exercise its discretion and deny the motion to amend.

**D. Defendants' Motion for Sanctions**

Defendants aver that Plaintiffs' motion to amend warrants sanctions pursuant to 28 U.S.C. §1927. Under this statute, sanctions are appropriate when an attorney "multiplies the proceeding in any case unreasonably and vexatiously." Zuk v. E. Pennsylvania Psychiatric Inst. of the Med. Coll. of Pennsylvania, 103 F.3d 294, 297 (3d Cir. 1996) (quoting U.S.C. §1927). Courts should exercise this measure "only in instances of a serious and studied disregard for the orderly process of justice." Ford v. Temple Hosp., 790 F.2d 342, 346-47 (3d Cir. 1986). Here Defendants fail to point to any evidence in the record that would indicate the requisite willful bad faith on the part of Plaintiffs' counsel. While improper purpose was part of the Court's reasoning for denying Plaintiffs' motion to amend, such action does not satisfy the wanton disregard for the "orderly process of justice" warranting the imposition of sanctions. Id. Therefore, Defendants' request is denied.

### III. CONCLUSION

Upon consideration of the aforementioned motions, the Court's disposition is as follows: (1) Plaintiffs' Petition for Attorneys' Fees and Costs is granted; (2) Defendants' Motion for Summary Judgment is granted; (3) Plaintiffs' Motion to Amend the Complaint is denied and (4) Defendants' Motion for Sanctions is denied. An appropriate Order follows.